UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RECEIVABLES EXCHANGE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-4152** |
| **SUNCOAST TECHNOLOGY, INC., ET AL.** | **SECTION "L" (5)** |

## ORDER AND REASONS

Currently pending before the Court is Plaintiff The Receivables Exchange, LLC's motion for partial summary judgment (Rec. Doc. 28). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I.   BACKGROUND

This case arises out of the sale of receivables over an electronic exchange. Plaintiff The Receivables Exchange, LLC ("TRE") operates an electronic marketplace for receivables, or the rights to be paid a sum of money by a third party. A seller that is owed a sum of money by a third party can place that receivable for auction through TRE's system. The seller receives an immediate payment, and the buyer obtains the right to be paid the debt at a discount to the face value. Participants in TRE's exchange sign a Master Program Agreement, and sellers also sign a Seller Agreement and a Seller Security Agreement with TRE. Pursuant to these agreements, sellers are required to certify that the receivables they offer for sale are "qualifying receivables," which includes the certification that the receivables are not subject to dispute in any fashion. That certification applies to each sale through the exchange.

Pursuant to the terms of the Seller Agreement, a seller on TRE's exchange is obligated to repurchase receivables sold to a buyer on the exchange if certain conditions occur:

Section 21.  Repurchase Obligations.

    A.      Seller absolutely, unconditionally, and irrevocably agrees to repurchase one or more Traded Receivables from the Buyer or Buyers thereof for a Repurchase Amount to be determined by TRE:
(i)      if for any reason the Account Debtor fails to pay the Face Value of the Traded Receivable, in full and in Good Funds, by no later than the 90th day following the Invoice Due Date; or
(ii)     when and if the Account Debtor raises any defense to payment or otherwise demonstrates that it is unable or unwilling to pay the Face Value of the Traded Receivable in full when due; or
...
(iv)    at the time of the occurrence of any Seller Event of Default.
SELLER'S REPURCHASE OBLIGATIONS UNDER THIS SELLER AGREEMENT ARE ABSOLUTE, UNCONDITIONAL AND IRREVOCABLE AND ARE NOT SUBJECT TO ANY CLAIM THAT SELLER MAY HAVE AGAINST THE BUYER OR TRE OR ANY DEFENSES TO PAYMENT (INCLUDING SURETYSHIP DEFENSES), ALL OF WHICH ARE KNOWINGLY WAIVED BY SELLER.

(Plaintiff's Exhibit 2 at 5, Rec. Doc. 28-6 at 7). Under the terms of the Master Program Agreement, a seller's failure to repurchase when required is an event of default, which allows TRE or the buyers to enforce the repurchase obligation. (Plaintiff's Exhibit 1 at 15-16, Rec. Doc. 28-5 at 20-21).

Defendant Suncoast Technology, Inc. is a former seller on TRE's exchange. Defendant Joseph Gordon is the president of Suncoast. In 2010, Suncoast allegedly sold approximately $1.7 million of receivables owed to it by Millenium Tele Card, Inc., (the "Millenium receivables") on TRE's exchange.[1] TRE alleges that Suncoast sold the Millenium receivables on the exchange despite knowing that Millenium Tele Card claimed an offset to those receivables of approximately $1.2 million. TRE also alleges that Gordon, in his capacity as President and in his individual capacity, certified that Suncoast was in compliance with the terms of its agreement with TRE.

---

[1] Neither Millenium Tele Card nor the buyers of the Millenium receivables are parties to this action.

TRE filed suit against Suncoast for breach of contract, conversion, and fraud in Civil District Court for the Parish of Orleans, pursuant to a forum selection clause in the Master Program Agreement between TRE and Suncoast.  TRE brings suit in its own capacity, and on behalf of the buyers of the Millenium receivables.[2]  TRE alleges that Suncoast misrepresented the status of the Millenium receivables, has refused to refund the amount Millenium Tele Card claims as an offset, and has refused to repurchase the Millenium receivables, all in violation of the various contracts between Suncoast and TRE.  TRE also asserts a claim for conversion and breach of contract because after the sales, Suncoast allegedly instructed Millenium to pay amounts owed on the Millenium receivables to Suncoast, when those sums should have been deposited by Millenium into a TRE account.  Finally, TRE also named Gordon as a defendant in his individual capacity, alleging that both he and Suncoast committed fraud by deliberately misrepresenting the status of the Millenium receivables.  Defendants timely removed to this Court.

## II.    PRESENT MOTION

Plaintiff TRE now moves for partial summary judgment on the question of Suncoast's repurchase obligations under the applicable contracts.  TRE submits an affidavit authenticating the contracts involved as well as stating that the Millenium receivables were not paid in full within 90 days of their due date and that Suncoast has not repurchased the obligations from the buyers.  TRE seeks judgment as a matter of law that Suncoast is obligated to repurchase the Millenium receivables from the buyers and pay associated fees and expenses.

Suncoast opposes the motion.  It argues first that discovery is in its early stages and that

---

[2]Pursuant to the Master Agreements, TRE has a contractual right to proceed against breaching sellers on behalf of the purchasers.

any summary judgment motion is inappropriate at this time. Second, Suncoast argues that the repurchase obligation is unenforceable as a matter of law because the repurchase price is not stated in the contract and is left entirely to TRE's unfettered discretion.

### III.     LAW AND ANALYSIS

#### A.     Motion for Summary Judgment

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

#### B.     Analysis

Neither party disputes that Louisiana law governs the interpretation of the contracts in question.[3]  "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045.  "A contract is formed by the consent of the parties established through offer and acceptance."  La. Civ. Code art. 1927.  "Sale is a contract whereby a person transfers ownership of a thing to another for a price in money.  The thing, the price, and the consent of the parties are requirements for the perfection of a sale."  La. Civ. Code art. 2439.  "A price must be fixed by the parties in a sum either certain or determinable through a method agreed by them."  La. Civ. Code. art. 2464.  "The price may be left to the determination of a third person.  If the parties fail to agree on or to appoint such a person, or if the one appointed is unable or unwilling to make a determination, the price may be determined by the court."  *Id.* art. 2465.[4]  "An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon the performance of some obligation by either party, is a bilateral promise of sale or contract to sell.  Such an agreement gives either party the

---

[3]The Master Program Agreement states that "the relationship between the parties and any claim or dispute ... shall be exclusively governed by and construed in accordance with the laws of the state of Louisiana, but excluding any conflict of law rules that would lead to the application of the laws of another jurisdiction."

[4]Neither party has cited Louisiana Civil Code article 2466, "No price fixed by the parties":
> When the thing sold is a movable of the kind that the seller habitually sells and the parties said nothing about the price, or left it to be agreed later and they fail to agree, the price is a reasonable price at the time and place of delivery.  If there is an exchange or market for such things, the quotations or price lists of the place of delivery or, in their absence, those of the nearest market, are a basis for the determination of a reasonable price.
> Nevertheless, if the parties intend not to be bound unless a price be agreed on, there is no contract without such an agreement.

Given that the Millenium Receivables were in fact sold on "an exchange or market for such things," that price may arguably be "a basis for the determination of a reasonable price" for repurchase.

5

right to demand specific performance.  A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates." La. Civ. Code art. 2623.

TRE argues that the terms of the agreements are clear and unequivocal: if the account debtor fails to pay the face value of the receivables the seller must repurchase those receivables from the buyer, and if the seller fails to repurchase those receivables, TRE may sue to enforce the repurchase obligation.  TRE has provided competent summary judgment evidence that Millenium did not pay the face value of the receivables and that Suncoast has not repurchased the Millenium Receivables from the buyers.  Therefore, TRE argues, as a matter of law Suncoast is obligated to repurchase the receivables from the buyers, at a price to be determined by TRE.

In response, Suncoast argues that the repurchase obligation is unenforceable because the repurchase price is not expressly set forth in the contract.  Citing Louisiana Civil Code articles 2439 and 2623, Suncoast contends that at the time it contracted with TRE, the price of any future repurchase was undefined and thus Suncoast could not have consented to any price.  In the absence of consent to a price, an element of contract formation is missing and the repurchase obligation cannot be enforced against it.  However, Suncoast does not provide any summary judgment evidence that the receivables were not timely paid or that the repurchase obligation has not been triggered; it simply agues that the repurchase obligation cannot be enforced against it.

In reply, TRE argues that although the agreement does not set the price at which Suncoast must repurchase the obligations from the buyers, the agreement does designate a third party to determine the price: TRE.  Under Louisiana law, parties to a contract can designate a third party to determine a price.  And because the terms of the Master Program Agreement are incorporated into every sale on TRE's exchange, the repurchase obligation was a term of the contract of sale between Suncoast and its buyers, and properly designated TRE as the third party

6

to determine the repurchase price. *See* La. Civ. Code. art. 2465. TRE also argues that Suncoast should be estopped from objecting to the repurchase obligation when it has accepted the benefits of selling receivables on the exchange.

The first question is whether the repurchase obligation has been triggered at all. Suncoast has not come forward with evidence that might generate a factual dispute as to whether the receivables were timely paid, nor has it indicated that TRE has not demanded repurchase of the receivables. Thus, at present there appears to be no factual dispute that the conditions triggering the repurchase obligation appears are met. If the repurchase obligation is not unenforceable due to the ambiguity of the price, then it seems likely there is no factual impediment to enforcement.

The next question is, at what price is Suncoast obligated to repurchase the receivables? The contract is silent as to that question, and the Court is hesitant to order that Suncoast repurchase the receivables when the Court does not know specifically what the outcome of that order will be. The use of the term "repurchase" would seem to imply simply undoing the sale, with Suncoast purchasing the Millenium Receivables back from the buyer for the same price that the buyer paid. That repurchase price would return the parties to the status quo, subject to late charges and fees allowed for under the contract. However, in its affidavit in support of summary judgment, TRE states that it has demanded repurchase at the face value of the receivables. (Rec. Doc. 28-4 at 3). That amount is presumably more than the buyers actually paid for the receivables, and would represent the benefit of the bargain the buyer would have received had the receivables been timely paid. That may also be a fair and reasonable repurchase price; however, it is not a price expressly set out in the contract.

Neither party has cited a case on all fours with this situation: a contract between two

7

parties, designating one of the parties to determine the repurchase price in the event that the other subsequently breaches a sale contract with a third party unknown at the time of the initial contract.  It may well be that TRE's demand for repurchase at the face value of the receivables is reasonable and consistent with its course of dealing with Suncoast or with other participants on its exchange or with internal procedures or guidelines for calculating the repurchase price.  However, the Seller Agreement and the record as yet do not speak to that question.  Discovery may provide some context to the appropriate measure of the repurchase price.  Therefore, TRE's motion is denied as premature with respect to the repurchase price.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that TRE's motion for partial summary judgment is DENIED at this time as premature.  TRE may file a motion again at a later date after Suncoast has had a reasonable opportunity for discovery related to how TRE calculates repurchase prices.

New Orleans, Louisiana, this  23rd  day of  June , 2011.

_____
UNITED STATES DISTRICT JUDGE